IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 18-cr-00328-PAB-6

UNITED STATES OF AMERICA,

    Plaintiff,

v.

6. MICHAEL BENITEZ-LOPEZ,

    Defendant.
_____

**ORDER**
_____

This matter comes before the Court on defendant Michael Benitez-Lopez' Motion to Suppress Results of Wiretap on Target Telephone Seven [Docket No. 143]. The United States has filed a response. See Docket No. 185. Defendant Benitez-Lopez asks the Court to suppress the evidence gathered from the wiretap of the telephone that the government has designated as Target Telephone Seven ("TT-7") based upon the claim that the government's application and affidavit supporting issuance of the wiretap failed to satisfy the necessity requirement. Docket No. 143 at 2.

**I. BACKGROUND**

On July 12, 2018, a grand jury returned the indictment in this case charging defendant Benitez-Lopez and twelve other defendants with twenty-five counts connected to drug trafficking activities. This indictment is one of five indictments stemming from a long-term investigation into several cocaine trafficking organizations

operating in the Denver metro area. The overall investigation, referred to as "Operation VIP Line," began in July 2015 and ended in March 2018. Docket No. 185 at 1.

Between January 2015 and June 2015, the Northern Colorado Drug Task Force ("NCDTF") conducted a wiretap investigation of the "Acosta" cocaine trafficking organization. NCDTF Investigator Kristie Allen was lead investigator assigned to the Acosta case. *Id.* at 2.

In April 2017, the DEA's Denver Division Strike Force Group ("Denver SFG") initiated the first wiretap as part of Operation VIP Line by targeting a telephone (hereinafter "TT-1") used by Armando Talamantes. During the period April 2017 through January 2018, Denver SFG continued to apply for wiretaps and intercept communications in connection with drug traffickers associated with Armando Talamantes. The wiretaps focused on the Talamantes portion of Operation VIP Line were as follows:

- On April 28, 2017, the Denver SFG applied for and received authorization to intercept a telephone used by Armando Talamantes ("TT-1");

- On May 15, 2017, the Denver SFG applied for and received authorization to intercept a telephone used by the defendant (hereinafter "TT-2");

- On June 9, 2017, the Denver SFG applied for and received authorization to continue interception on TT-2 used by the defendant;

- On July 20, 2017, the Denver SFG applied for and received authorization for a second continuation of interception on TT-2 used by the defendant;

- On August 23, 2017, the Denver SFG applied for and received authorization to intercept a telephone used by the defendant (hereinafter "TT-7"); and a telephone used by Armando Talamantes (hereinafter "TT-8");

- On September 22, 2017, the Denver SFG applied for and received authorization to continue interception of communications on TT-7 used by the defendant and TT-8 used by Talamantes.

Docket No. 185 at 5.

## II. ANALYSIS

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, governs electronic eavesdropping by law enforcement. *See* 18 U.S.C. §§ 2510-22. Title III sets up special procedures for obtaining wiretap authorization, including presenting a written application to a judge. *See generally United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). A judge may only grant such authorization if the application meets the necessity requirement by showing that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous" to try. 18 U.S.C. § 2518(3)(c). The purpose of this requirement "is to ensure that the relatively intrusive device of wiretapping 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *United States v. Edwards*, 69 F.3d 419, 429 (10th Cir. 1995) (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). If an application is granted without meeting the necessity requirement, the wiretap evidence must be suppressed. *See Green*, 175 F.3d at 828. However, an order authorizing a wiretap is "presumed proper and the defendants have the burden of overcoming that presumption." *United States v. Barajas*, 710 F.3d 1102, 1107 (10th Cir. 2013); *United States v. Zapata*, No. 04-cr-00403-LTB, 2006 WL 954838 (D. Colo. Apr. 11, 2006), *aff'd United States v. Zapata*, 546 F.3d 1179 (10th Cir. 2008); *United States v. Mitchell*, 274 F.3d 1307, 1310 (10th Cir. 2001). In assessing whether the judge who authorized the wiretap abused his or her discretion when making necessity determinations, the Court

3

analyzes only the information provided in the affidavit for each challenged wiretap. *United States v. Oregon-Cortez*, 244 F. Supp. 2d. 1167, 1172 (D. Colo. 2003); *United States v. Merton*, 274 F. Supp. 2d 1156, 1166 (D. Colo. 2003).

The affidavit in support of TT-7 was signed by Investigator Allen and is dated August 23, 2017. *See* Docket No. 185-1 at 138. Paragraph 16 of the affidavit describes the targets and interceptees, who are members and associates of the Armando Talamantes Drug Trafficking Organization ("Talamantes DTO"). *Id*. at 8-10. Thirty-seven persons are listed. The government concedes that, as of the filing of the wiretap application, law enforcement officers had identified several members of the Talamantes DTO. Docket No. 185 at 24. However, it claims that, of the 34 names listed in Paragraph 16, only ten of them were identified by name. *Id*. Thus, the government argues, there was a legitimate reason to intercept TT-7 in order to identify those individuals. *Id*.

Paragraphs 188 to 313 of the affidavit explain the necessity for the wiretaps sought. For example, paragraph 194 of the affidavit notes that the defendant's residence, being located in a trailer park, made placement of a pole camera "virtually impossible." Docket No. 185-1 at 92. Investigator Allen considered using stops of vehicles leaving bars and restaurants to gather information, but determined that technique would be counter productive. *Id*. Investigator Allen used physical surveillance of defendant, but noted that "without the interception of wire and electronic communications to and from TT-3, TT-7, TT-8, TT-9 and TT-10, physical surveillance alone will not achieve the goals of the investigation." *Id*. at 100-01. Investigator Allen

4

stated that she believed that probable cause existed to obtain a search warrant on Mr. Benitez-Lopez' residence, but believed that it would be "extremely difficult to determine when drugs or other evidence of a crime will be found there." *Id.* at 102. Moreover, she did not believe that execution of a search warrant would reveal his level of participation. *Id*. Investigator Allen discussed information that Confidential Source-1 ("CS-1") could obtain, but concluded that she did not "believe that CS-1 alone will achieve the overall objectives of this investigation." *Id*. at 103.

Investigator Allen also described use of the grand jury and interviews of witnesses, including limitations on the information possessed by such witnesses and the ability of law enforcement to get information from them without jeopardizing the goals of the investigation. *Id*. at 105-115. The affidavit reviewed other traditional techniques, such as pen register data, cell site locator data, trash runs, public record searches, and financial investigations. *Id*. at 116-123. Finally, the affidavit reviewed previous interceptions of various telephone numbers. *Id*. at 123-128. Investigator Allen noted that intercepts of TT-2 had proved beneficial to the overall investigation, but that the defendant primarily used TT-2 "for his smaller customers and is using TT-7 for sources of supply and larger customers." *Id*. at 125. She indicated that she would no longer seek authorization to intercept communications on TT-2[1]. She also indicated that she has been "unable to determine the full identities of many of BENITEZ' customers or his alternate sources of supply such as CHRISTIAN." *Id*. at 126. The

---

[1] Investigator Allen had previously mentioned that the defendant told Talamantes on June 28, 2017 that he was now using TT-7 because "the other one was burned," which Allen believed was a reference to defendant's conclusion that another telephone that he used had become known to law enforcement. *Id*. at 62.

5

affidavit describes many other goals concerning information not specifically related to the defendant that had not been achieved. *Id*.

Mr. Benitez-Lopez does not challenge Investigator Allen's conclusions that the traditional law enforcement techniques reviewed in the affidavit did not achieve the goals of the government's investigation. The defendant's argument, while not specific to the affidavit's discussion of traditional investigative techniques, is that "a case had already been made against this defendant, and thus there was absolutely no need, or 'necessity,' for a wiretap on TT-7." Docket No. 143 at 7. However, that the United States may have been able to indict Mr. Benitez-Lopez at the time it applied for the interception of TT-7 does not undermine its necessity showing. Necessity need not be shown as to each interceptee. *United States v. Mitchell*, 274 F. 3d 1307,1312 (10th Cir. 2001). The fact that the government sought to identify other persons who were calling or being called by TT-7 in connection with suspected drug dealing by the Talamantes DTO is sufficient to establish necessity, regardless of whether doing so would have the effect of increasing the quantity of narcotics ultimately attributable to the defendant.

The Court's review of the affidavit's identification and discussion of traditional law enforcement techniques, whether for abuse of discretion or *de novo*, demonstrates that the affidavit does establish necessity and that the only reasonable way to overcome the failings of the traditional techniques was through the use of further interceptions, including the interception of TT-7.

Wherefore, defendant Michael Benitez-Lopez' Motion to Suppress Results of Wiretap on Target Telephone Seven [Docket No. 143] is denied.

DATED July 11, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge